```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION
```

DIRECTV, LLC, a California
Limited Liability Company                                PLAINTIFF

VS.                              CIVIL ACTION NO. 5:14-cv-46(DCB)(MTP)

ROOSEVELT B. DUNAWAY, a/k/a
BILLY DUNAWAY, Individually
and d/b/a 98 TAVERN & SEAFOOD
BAR; and MARGARET ROGERS,
Individually and d/b/a
98 TAVERN & SEAFOOD BAR                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiff's Motion for Default Judgment **(docket entry 9)**. Having carefully considered the motion, to which the defendants have not responded, and the record in this case, the Court finds as follows:

The plaintiff DIRECTV, LLC ("DIRECTV") commenced this action by filing its Complaint against defendants Roosevelt B. Dunaway ("Dunaway") and Margaret Rogers ("Rogers"). Proofs of service of the Summons and Complaint on both defendants were filed. Subsequently, an entry of default as to both defendants was made and the plaintiff filed its motion for default judgment. Copies of the motion were mailed by the plaintiff to the defendants, as were copies of the plaintiff's memorandum brief in support of the motion. To date, neither defendant has entered an appearance and neither has responded to the Complaint or to the motion for default judgment.

Following the Clerk's entry of default (docket entry 8), the allegations in the plaintiff's Complaint concerning the defendants' liability are admitted and deemed true.  Fed.R.Civ.P. 8(b)(6) (allegations other than those relating to damages are admitted if a responsive pleading is required and the allegations are not denied).

DIRECTV is a limited liability company established under the laws of the State of California.  Complaint, ¶ 5.  It is a major distributor of satellite programming doing business throughout the United States.  Id.  It provides interstate direct broadcast satellite programming to subscribers with specialized satellite receiving equipment who pay for programming via a subscription fee and who obtain a programming license from DIRECTV in return for the subscription.  Users with a subscription can watch programs on their television electronically communicated by DIRECTV via satellite ("satellite programming").  DIRECTV holds proprietary rights to the satellite programming it transmits, and DIRECTV is the owner and/or lawfully designated distribution agent for such satellite programming.  Id.

DIRECTV's satellite programming is available to both residential and commercial customers.  Memorandum in Support of Motion for Default Judgment, p. 3.  In order to receive and view DIRECTV satellite programming, each customer is required to obtain DIRECTV satellite hardware (including a small satellite dish and

DIRECTV integrated receiver/decoder ("IRD") with DIRECTV Access Card) and is required to establish an account with DIRECTV. DIRECTV sells and distributes DIRECTV satellite equipment necessary to receive DIRECTV programming. Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase. Id.

Customers wishing to receive DIRECTV's programming pay a monthly subscription fee; however, commercial accounts are charged a higher amount since in business establishments the programming is displayed to the public. Residential and commercial accounts receive the same satellite equipment used to receive the DIRECTV programming signals; therefore, it would not be difficult for a residential subscriber to move the residential equipment to a commercial establishment. It would also be possible for a commercial establishment to establish an account at or near its place of business and/or create a residential account at its business address, and/or display or use DIRECTV satellite programming accessible via the internet without proper authorization, thereby fraudulently receiving DIRECTV's satellite programming at a reduced rate. Id.

On June 23, 2011, at approximately 2:30 pm, Brian D. Fox, an auditor for DIRECTV, observed a single television set in the defendants' establishment, 98 Tavern & Seafood Bar, which was

3

exhibiting DIRECTV satellite programming without proper authorization from DIRECTV.  Id.  The plaintiff has filed an Affidavit of DIRECTV's Vice President of Risk Management, Kent P. Mader (docket entry 10), as well as Fox's Affidavit (docket entry 10-1), and additional exhibits in the form of still photographs (docket entry 10-2), video (docket entry 10-3), and account records (docket entry 10-4).

In limited circumstances, not present here, Federal Rule of Civil Procedure 55(b)(1) permits the Clerk of Court to enter a default judgment against a defendant party.  In all other cases, the claimant must apply to the Court for a default judgment. Fed.R.Civ.P. 55(b)(2).  A claimant is not entitled to a judgment by default as a matter of right.  "The dispositions of motions for entries of defaults and default judgments ... are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2nd Cir. 1993).

As a preliminary matter, the Court must address its jurisdiction over the controversy.  The plaintiff brings this action pursuant to Title 47 U.S.C. § 605(a) of the Cable Communications Policy Act, as amended by the Satellite Home Viewer Act of 1988, Pub.L. 100-667, 102 Stat. 3959-60 (hereafter, "the Communications Act").  Section 605(a) imposes liability upon a

4

person who, without authorization, receives any interstate or foreign communication transmitted by wire or radio and uses such communication for his own benefit or for the benefit of another not entitled thereto.  47 U.S.C. § 605(a).  Section 605(e)(3)(A) of the Communications Act entitles "any person aggrieved" to file a civil action in federal district court to address an alleged violation of 47 U.S.C. § 605(a).  The term "any person aggrieved" includes "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programing."  47 U.S.C. § 605(d)(6).  Thus, this Court's jurisdiction is properly invoked.

The Court turns now to the consideration of whether a default judgment in favor of the plaintiff is appropriate in this case. The Fifth Circuit Court of Appeals has observed that

> [r]eview of  a default judgment puts competing policy interests at play.  On one hand, "we have adopted a policy in favor of resolving cases on their merits and against the use of default judgments."  On the other, this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."

Wooten v. McDonald Transit Assoc. Inc., 775 F.3D 689, 693 (5th Cir. 2015)(quoting In re Chinese-Manufactured Drywall Prods. Liab. Litig., 742 F.3d 576, 594 (5th Cir. 2014))(internal citations and additional citations omitted).

"A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be

5

true." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)(citing Thomson v. Wooster, 114 U.S. 104, 113 (1885)).  In other words, "a defendant's default does not in itself warrant the court in entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered."  Id.  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  Id.

Since the defaulting parties are absent, the Court logically should consider the matter from the reverse angle, i.e., "'consider whether factors are present that would later oblige the court to set that default judgment aside.'"  DIRECTV, LLC v. Meadows, 2014 WL 3894851, *3 (W.D. N.C. Aug. 8, 2014)(quoting 10 Moore's Federal Practice, § 55.31[2] (Matthew Bender 3d Ed. 2013)(footnote omitted)).

The Fifth Circuit has  noted:

> Rule 60(b) provides several statutory bases for vacating a default judgment, including mistake, inadvertence, surprise, or excusable neglect. Fed.R.Civ.P. 60(b).  As we have previously explained, Rules 55(c) and 60(b) allow a district court to set aside an entry of default or default judgment for "good cause." [Lacy v. Sitel Corp., 227 F.3d 290, 291-92 (5th Cir. 2000)].  To determine whether or not good cause is present, we consider three factors: (1) whether the default was willful; (2) whether setting aside the default judgment would prejudice Plaintiffs; and (3) whether [the defendant] presented a meritorious defense.  Id. at 292.  We may also consider other factors, including whether [the defendant] acted expeditiously to correct the default.  Id.

Chinese-Manufactured Drywall, 742 F.3d at 594.  The Fifth Circuit has also held that "[a] finding of willful default ends the

6

inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding." Lacy, 227 F.3d at 292.

Based on the record before this Court, including the defendants' lack of any activity following service of the Complaint, the Court finds that the defendants have taken no action in response to any of the plaintiff's initiatives. The Court concludes that the history of this case suggests a conscious decision on the part of defendants to ignore the plaintiff's allegations and to ignore their duty to respond thereto. The defendants' failure to respond was therefore willful, and not merely "dilatory action" on the part of defendants. The Court therefore does not reach the remaining two factors, prejudice and a meritorious defense.

In this matter, the plaintiff has pleaded facts consistent with the statute's requirements. In short, the plaintiff has alleged that defendants removed from a residence one of DIRECTV's specialized receivers leased solely for residential purposes, and installed the receiver in their restaurant to provide patrons with DIRECTV's television programming entertainment. The plaintiff's documentation establishes that Margaret Rogers was a residential subscriber of DIRECTV's programming and therefore had no permission to use the plaintiff's specialized equipment or satellite communications for commercial purposes. See Affidavit of Kent P.

7

Mader (docket entry 10).  The plaintiff's Complaint alleges that the defendants "received, assisted in receiving, transmitted, assisted in transmitting, divulged, published and displayed the content and substance of DIRECTV Satellite Programming" at their place of business "without entitlement, without prior permission or authorization from DIRECTV, and without having paid DIRECTV for the right to receive, broadcast, use or display DIRECTV's Satellite Programming" in their commercial establishment.  Complaint (docket entry 1), pp. 4-5.

The plaintiff also alleges, upon information and belief, that Dunaway is the owner of the business 98 Tavern & Seafood Bar, that Rogers is the owner of the property on which the business is located, and that both Dunaway and Rogers were the individuals with supervisory capacity and control over the activities of the business during the relevant time period.  Complaint, p. 3.  These allegations, though alleged upon information and belief, are deemed admitted.  See Fong v. United States, 300 F.2d 400, 409 (9th Cir. 1962)(finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge).  Based on the foregoing, the Court finds a sufficient basis in the pleadings for a default judgment in favor of the plaintiff.

The Court now turns to the consideration of damages.  Section 605 allows plaintiffs to elect to recover either actual damages and

8

lost profits, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(I). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). Furthermore, section 605(e)(3)(C)(i)(II) vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F.Supp. 480, 484 (D. Conn. 1993); Joe Hand Promotions, Inc. v. Nekos, 18 F.Supp.2d 214, 217 (N.D. N.Y. 1998)(the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In this case, the plaintiff has opted for statutory damages. An award of statutory damages must be between $1,000 and $10,000, as the Court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). Here, there are no allegations that the defendants have previously engaged in similar conduct. Where the defendants are first-time offenders, courts have found grounds for awarding the statutory minimum. See, e.g., J&J Sports Productions, Inc. v. Gamino, 2012 WL 913743 *3 (E.D. Cal. March 16, 2012)(awarding statutory minimum

"[i]n light of the size of the establishment, the audience that viewed the program [twelve], and the lack of evidence of financial gain"); G & G Closed Circuit Events, LLC v. Nguyen, 2012 WL 2339699 *3 (N.D. Cal. May 30, 2012)(awarding statutory minimum where plaintiff "does not allege that Defendant promoted the Program or increased prices for food or drinks ... [n]or does Plaintiff allege that there was a cover charge to enter the establishment").

In J&J Sports Productions, Inc. v. Cotorra Cocina Mexicana & Bar LLC, 2012 WL 1098446 (S.D. Miss. March 30, 2012)(Reeves, J.), decided on a motion for default judgment, the Court found evidence that the defendant unlawfully broadcasted a championship fight on one large screen television and two smaller televisions, and that "the total number of patrons varied at 2, 6, and 8 throughout the evening." Id. at *2.  Judge Reeves found:

> With respect to damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), there is nothing about the facts of this case that supports an award beyond the statutory minimum.  There is no evidence that Cotorra Cocina either advertised or promoted the broadcast in an attempt to increase its patronage.  It did not charge a cover charge.  There is no evidence that the restaurant intended to directly profit from the violation or that it made any profit from the violation.  The fact that no more than eight patrons were in the restaurant suggests strongly that there was no profit to be made.  Moreover, there is no evidence that Cotorra Cocina was a repeat offender.  Consequently, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $1,000.00 is just.

Id. at *3.

In the case sub judice, the plaintiff's investigator describes the 98 Tavern & Seafood Bar as a "small establishment with one end

10

being the bar area with a very short bar for about a dozen people, and the other end being the seafood market area with freezers / refrigerators and bins / sinks." (Affidavit of Brain D. Fox). He observed an unidentified woman behind the bar (the only occupant of the establishment) watching a Wimbledon tennis match. No patrons were observed at the tavern during the investigator's visit of June 23, 2011. (Id.). The investigator does not state that he was charged a cover charge. (Id.). The only advertising, as indicated by the investigator's photographs, was for boiled peanuts, jumbo shrimp, crawfish and cracklins, not for any television programming. (Plaintiff's Exhibit C). There is no evidence of defendants' financial gain, and it is not alleged that defendants are repeat offenders. The Court therefore finds that the statutory minimum of $1,000 in damages is appropriate.

The plaintiff also seeks an enhancement of damages up to the statutory maximum of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). To receive enhanced damages, the plaintiff must establish that the violation was willful and that the defendants' display of the programming was for "purposes of direct or indirect commercial advantage or private financial gain." Id. Courts typically consider the following factors in determining whether a defendant's willful conduct justifies enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff;

11

defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, 2003 WL 21383826 *5 (S.D. N.Y. June 11, 2003)(citations omitted). Finding none of the factors to be present, the Court declines to award enhanced damages.

The plaintiff, in its Complaint, sought pre-judgment interest, but omitted pre-judgment interest from its Motion for Default Judgment. The Court considers the issue waived. See Herrera v. Tri-State Kitchen and Bath, Inc., 2015 WL 1529653, *13 (E.D. N.Y. March 31, 2015)(failure to seek pre-judgment interest in motion for default judgment constituted waiver); Mays v. JP & Sons, Inc., 178 Fed.Appx. 378, 382 (5th Cir. 2006)(failure to seek pre-judgment interest in pre-trial order constituted waiver); Innovations, Designs & Interiors, Inc. v. Southern Guaranty Insurance Co., 2002 WL 1611498, *1 (N.D. Miss. June 13, 2002)(same).

Even if pre-judgment interest were not waived, the Court finds that it should be denied. Section 605 does not provide a statutory basis for pre-judgment interest. J&J Sports Productions, Inc. v. Morley's Tavern, 2014 WL 4065096, *11 (E.D. N.Y. May 9, 2014). Such an award is discretionary and is usually reserved for "exceptional" cases. J&J Sports Productions, Inc. v. Lovell, 2014 WL 4905351, *6 (E.D. N.Y. Sept. 11, 2014). The plaintiff adduces no evidence that this case is "exceptional" and warrants the award of pre-judgment

interest. The Court therefore alternatively denies pre-judgment interest.

The plaintiff also sought post-judgment interest in its Complaint, and omitted it from its Motion for Default Judgment. Unlike pre-judgment interest, however, post-judgment interest is not discretionary. Title 28 U.S.C. § 1961 states that post-judgment interest "shall be allowed" on any money judgment in a civil case recovered in a district court. The Court shall therefore award the plaintiff post-judgment interest.

The plaintiff also seeks attorneys fees and costs. As the prevailing party, DIRECTV is entitled to an award of its costs, including reasonable attorneys fees. 47 U.S.C. § 605(e)(3)(B)(iii). The Court has reviewed the plaintiff's submissions, and finds that the costs and attorneys fees, totaling $3,703.65, are reasonable as to the amount of costs, the billing rate of attorneys, and the hours expended. The Court further finds that the costs and attorneys fees are in line with similar cases in this district. See, e.g., Cotorra Cocina Mexicana & Bar LLC, 2012 WL 1098446, at *4 (awarding $3,295.00 in costs and attorneys fees).

Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion for Default Judgment **(docket entry 9)** is GRANTED;

FURTHER ORDERED that the defendants, Roosevelt B. Dunaway and Margaret Rogers, Individually and d/b/a 98 TAVERN & SEAFOOD BAR,

are jointly and severally liable to the plaintiff for the following:

(1) Statutory damages in the amount of $1,000.00, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

(2) Costs and attorneys fees in the amount of $3,703.65, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii);

(3) Post-judgment interest on the total award of $4,703.65, pursuant to 28 U.S.C. § 1961, commencing upon entry of the Final Default Judgment in this case until the date of payment.  Such interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment.  Interest shall be computed daily to the date of payment, and shall be compounded annually.  For the week preceding the date of this Memorandum Opinion and Order, and the Court's Final Default Judgment, the weekly average 1-year constant maturity Treasury yield was 0.41%.

A Final Default Judgment shall issue this day.

SO ORDERED, this the 25th day of September, 2015.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

14